IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT COOKEVILLE

NATASHA LEIGH LESLIE )
)  Case No. 2:25-cv-00025
v. )
)
LELAND DUDEK, *Acting Commissioner Social* )
*Security Administration* )

To:     The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Plaintiff Natasha Leigh Leslie filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 11) and memorandum in support (Docket No. 11-1), to which Defendant SSA has responded (Docket No. 13). This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 15.) Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 11) be **DENIED**.

## I.     INTRODUCTION

On March 29, 2021 Plaintiff proactively filed applications for both DIB and Supplemental Social Security ("SSI"). (Transcript of the Administrative Record (Docket No. 7) at 31).[1] In both applications, Plaintiff asserted that, as of the alleged onset date of May 1, 2017, she was disabled

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

and unable to work due to the following physical or mental conditions: cyst removal from brain, arachnoid cyst; complications from cyst; balance and dizziness issues; and chronic pain from skull to left leg. (AR 338.)[2]

These claims were denied initially on July 28, 2022 (AR 125–26) and upon reconsideration on February 13, 2023 (AR 185–86). On September 13, 2023, Plaintiff appeared with a representative and testified at a telephonic hearing conducted by Administrative Law Judge ("ALJ") Marty Turner. (AR 87–124.) On January 9, 2024, the ALJ denied the DIB claim, but granted the SSI claim. (AR 31–39.) On February 13, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision with respect to the DIB claim, thereby making the ALJ's decision the final decision of the SSA. (AR 1–7.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S FINDINGS

In his January 9, 2024 decision, the ALJ included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since May 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since the alleged onset date of disability, May 1, 2017, through the date last insured of September 30, 2018, the claimant did not have a severe impairment (20 CFR 404.1520(c) and 416.920(c)).

4. For the Title 16 Supplemental Security Income claim, the protective filing date was March 29, 2021. As of the established onset date of disability of July 22, 2020, the claimant has had the following severe impairments: spinal disorder; cerebral cysts status-post craniotomy; and depression with anxiety (20 CFR 404.1520(c) and 416.920(c)).

---

[2] Plaintiff originally alleged an onset date of May 1, 2017. (AR 338.) At the hearing, Plaintiff's counsel requested that the alleged onset date be changed to September 1, 2018. (AR 96.) However, in his decision, the ALJ refers to the alleged onset date as May 1, 2017. (AR 33.)

5. Since the established onset date, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that since July 22, 2020, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she is limited to understanding, remembering; and carrying out simple instructions; tolerating occasional changes in work settings; interacting occasionally with the general public, coworkers; and supervisors; and would be off-task at least 15% due to unscheduled breaks and absenteeism.

7. Since the established onset date, the claimant has been unable to perform any past relevant work (20 CFR 416.965).

8. Prior to the established disability onset date, the claimant was a younger individual age 18-44. The claimant's age category has not changed since the established disability onset date (20 CFR 416.963).

9. The claimant has at least a high school education (20 CFR 416.964).

10. Beginning on July 22, 2020, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). The impartial vocational expert indicated there were no transferrable skills.

11. Beginning on July 22, 2020, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

12. The claimant was not disabled prior to July 22, 2020, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13. The claimant was not under a disability within the meaning of the Social Security Act at any time through September 30, 2018, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(AR 33–39.)

### III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her residual functional capacity ("RFC"),

4

which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B.     The ALJ's Five-Step Evaluation of Plaintiff**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 1, 2017.[3] (AR 33.) At step two, the ALJ found that Plaintiff did not have a severe impairment between her alleged onset date of May 1, 2017 and her date last insured of September 30, 2018. (AR 33–34.) However, with respect to her SSI claim, the ALJ found that Plaintiff did have the following severe impairments as of her onset date of July 22, 2020: spinal disorder; cerebral cysts status-post craniotomy; and depression with anxiety. (AR 34.) Nevertheless, the ALJ found that Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

---

[3] *See supra*, n.2.

C.F.R. Part 404, Subpart P, Appendix 1 since the onset date of July 22, 2020. (AR 34.) At step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work with certain non-exertional limitations. (AR 34–38.) Finally, at step five, the ALJ determined that there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 38–39.)

Therefore, the ALJ concluded that Plaintiff was not disabled prior to the onset date of July 22, 2020, but became disabled on that date and continued to be disabled through the date of the decision on January 9, 2024. The ALJ also concluded that Plaintiff was not disabled at any time through September 30, 2018, the date last insured. (AR 39.)

**C.     Plaintiff's Assertion of Error**

Plaintiff sets forth one assertion of error with respect to the ALJ's finding that she was not entitled to DIB: the ALJ erred when he found that Plaintiff did not have a severe impairment between her alleged onset date of May 1, 2017 and her date last insured of September 30, 2018. (Docket No. 11-1 at 3–8.) Plaintiff does not seek judicial review of the ALJ's decision with respect to her entitlement to SSI. (*Id.* at 1.)

Based on this assertion of error, Plaintiff asks for two forms of alternative relief: (1) pursuant to *sentence four* of 42 U.S.C. § 405(g), she asks the Court to either reverse the decision of the SSA and award her DIB, or remand the matter back to the SSA for further consideration; and (2) pursuant to *sentence six* of 42 U.S.C. § 405(g), she asks the Court to remand the matter back to the SSA to consider additional evidence. The Court will analyze whether Plaintiff is entitled to either form of relief.

### 1. Plaintiff's Request Under Sentence Four of 42 U.S.C. § 405(g)

Although Plaintiff asserts that the ALJ erred when he found that she did not have a severe impairment between her alleged onset date and her date last insured, she fails to identify which specific impairment or impairments the ALJ failed to recognize. Instead, she argues that medical evidence from one of her providers, Woodbury Medical Center, from January 24, 2017 to September 19, 2018 shows that she began experiencing symptoms prior to September 1, 2018. Accordingly, she argues that the ALJ should have considered this evidence when determining whether she had a severe impairment.

The ALJ found as follows at step two:

> 3. Since the alleged onset date of disability, May 1, 2017, through the date last insured of September 30, 2018, the claimant did not have a severe impairment (20 CFR 404.1520(c) and 416.920(c)).
>
> Prior to the date last insured [September 30, 2018], the record reflects the claimant received treatment through Namaste OBGYN (Exhibit 20F; 5F). These treatment notes document treatment with Celexa for depression/anxiety, Prazantel for tapeworms, and Armour for her hypothyroidism (Exhibit 20F, 5-8, 11). In October 2018 and August 2018, physical exams were entirely normal. The claimant denied suicidal thoughts, and her treating provider noted the claimant's somatic symptoms were likely due to her parents' divorce, which she reported was causing her anxiety (Exhibit 20F, 8, 11-12). She attended two counseling sessions in 2018, despite her counselor offering eight free sessions (Exhibit 18F, 2-3). Accordingly, for these reasons, the undersigned finds these impairments cause no more than minimal limitation in the claimant's ability to perform basic work activities. Therefore, these impairments are non-severe.
>
> For the claimant's Title II claim and prior to the date last insured [September 30, 2018], the claimant has the following degree of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: no limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere (20 CFR 404.1520a(d)(1)).

> Accordingly, for the purposes of the claimant's Title II application, the claimant did not have a severe impairment prior to the date last insured [September 30, 2018]. Therefore, the remainder of the decision will adjudicate only the claimant's Title XVI application [for SSI].

(AR 33–34.)

After receiving the ALJ's decision, Plaintiff's counsel wrote to the Appeals Council and provided it with the Woodbury Medical Center records. (AR 66–86, 301–09.)[4] Plaintiff's counsel argued that these medical records showed that Plaintiff "began experiencing and manifesting physical symptoms" prior to September 1, 2018 and as early as January 24, 2017. (AR 303.) Plaintiff's counsel asked the Appeals Council to consider the records in its review. (AR 303.)

In its letter denying Plaintiff's request for review of the ALJ's decision, the Appeals Council stated, "You also submitted medical records from Woodbury Medical Center dated January 24, 2017 to September 19, 2018 (21 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (AR 2.) Now, in her motion, Plaintiff argues once again that the Woodbury Medical Center records, as well as medical records that the ALJ was able to review before his decision was rendered, show that she began experiencing symptoms prior to September 1, 2019.

In determining whether an ALJ's decision is supported by substantial evidence, the Sixth Circuit has "repeatedly refused to consider evidence submitted after the ALJ issued his decision." *Culer v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014). *See also Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Thus, the Court cannot consider this additional evidence from Woodbury Medical Center in determining whether to uphold, modify, or reverse the ALJ's

---

[4] The index of the Administrative Record indicates that Plaintiff's counsel dated her letter March 1, 2024. (AR .) However, the first page of the letter appears to be missing from the record, so the Court is not certain of the exact date. (AR 301–09.) Nevertheless, the letter and documents were stamped received by the SSA on March 14, 2024. (AR 302.)

decision under sentence four of 42 U.S.C. § 405(g). For these reasons, the Court rejects Plaintiff's assertion of error that the ALJ's decision at step two was not supported by substantial evidence. Plaintiff provides no other argument to support her assertion of error with respect to sentence four except to say that the ALJ should have reviewed these medical records.

    2.    **Plaintiff's Request Under Sentence Six of 42 U.S.C. § 405(g)**

Nevertheless, the Court can provide relief to Plaintiff under sentence six of 42 U.S.C. § 405(g) and remand the case. The Court can only provide this relief if Plaintiff demonstrates that the evidence is "new" and "material," and if Plaintiff shows good cause for her failure to present the evidence to the ALJ. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding" and is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (citations omitted).

First, there is no question that the Woodbury Medical Center records submitted by Plaintiff are not new. The records are dated from January 24, 2017 to September 19, 2018, so they were in existence and available to Plaintiff at the time of the administrative proceeding. Plaintiff concedes as much. (Docket No. 11-1 at 7.)

Second, although it is less clear whether the Woodbury Medical Center records are material, the Court ultimately finds that they are not. Plaintiff refers generally to the Woodbury Medical Center records as showing that she "suffered constant headaches, dizziness and fatigue." (Docket No. 11-1 at 6.) She then identifies two specific records that she believes are important: (1) a January 24, 2017 treatment record that notes that she complained of "dyspnea upon exertion, dizziness, cold intolerance, headaches, and fatigue" (AR 66–67); and (2) a November 28, 2017 CT

9

report finding no changes in "prominent extra-axial fluid space midline posterior fossa" (AR 86). In addition to the Woodbury Medical Center records, she also points to existing medical evidence that the ALJ reviewed to demonstrate that she reported symptoms to her provider in August 2018; continued to suffer symptoms in 2020; had surgery to remove the cyst in August 2020; and reported symptoms to her provide in March 2021. (*Id.* at 6–7.) Plaintiff argues that these records – both newly submitted and existing in the record – "verify the consistency and history of her current symptoms," especially her "suboccipital posterior fossa arachnoid cyst with cerebellar compression." (*Id.* at 7.)

Plaintiff fails, however, to meet her burden to demonstrate to the Court that there is a "reasonable probability" that the ALJ would have reached a different disposition on her DIB claim if presented with the Woodbury Medical Center records. In his decision, the ALJ considered Plaintiff's 2018 treatment records, but could not consider any 2017 records because she failed to submit them. The ALJ wrote that her treatment records from August and October 2018 were "entirely normal"; that she denied suicidal thoughts at those visits; that her provider thought her somatic symptoms were due to her parents' divorce; and that she only attended two counseling sessions despite more being available. (AR 34.) Accordingly, he found that Plaintiff's impairments caused no more than minimal limitations in her ability to perform basic work activities. (AR 34.) The mere existence of headaches in 2017 and 2018 – whether they were or were not a "manifest[ation of] physical symptoms of [Plaintiff's] subsequently diagnosed suboccipital posterior fossa arachnoid cyst with cerebellar compression" as Plaintiff contends (Docket No. 11-1 at 5) – does not in and of itself create a "reasonable probability" that the ALJ would find that these headaches were severe enough to cause more than minimal limitations in Plaintiff's ability

10

to perform basic work activities during that period. In short, Plaintiff has failed to demonstrate that these headaches would lead the ALJ to determine that she was eligible for DIB.

Finally, Plaintiff has not shown "good cause" for her failure to present these medical records to the ALJ. She argues that she has "issues with memory and recall of the simplest of facts, which includes the accurate identification of her past medical treatment." (Docket No. 11-1 at 7.) She points to her hearing testimony and a supplemental brief that she filed with the SSA as evidence of these memory issues. (AR 100-103, 112, 485–89.) The Court is not persuaded. Plaintiff was able to remember other providers that she saw during 2018 and submit those records to the SSA. (AR 680–753, 1044–46, 1056–98.) She fails to provide any specific reasons that she could not remember Woodbury Medical Center. Accordingly, the Court does not find that memory issues alone provide sufficient good cause for Plaintiff's failure to present evidence from Woodbury Medical Center to the ALJ.

Accordingly, to the extent Plaintiff is requesting a sentence six remand, the Court finds no basis for such a remand because the records were neither new nor material and because Plaintiff has not demonstrated good cause for her failure to submit the records.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion for judgment on the administrative record (Docket No. 11) be **DENIED** and the Social Security Administration's decision be **AFFIRMED**.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified

time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

    Respectfully submitted,

**Signed By:**
*J. Gregory Wehrman*
**United States Magistrate Judge**